UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALICE FILINOVICH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04 C 7189 |
| ) | |
| ROGER CLAAR, in his individual capacity; and ) | Judge John W. Darrah |
| VILLAGE OF BOLINGBROOK, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Alice Filinovich, filed suit against Defendants, the Village of Bolingbrook ("the Village") and Roger Claar, the Mayor of the Village. Count I alleges religious discrimination in violation of Title VII against the Village, Count II alleges a claim of religious discrimination in violation of 42 U.S.C. § 1983 against the Village, and Count III alleges a claim of religious discrimination in violation of 42 U.S.C. § 1983 against Claar. Defendants have moved for summary judgment on all counts, and Plaintiff has moved for summary judgment on Count I. Defendants have also moved to strike portions of Plaintiff's local rule 56.1(b) responses. These objections and Plaintiff's responses have been reviewed, and only materials properly before the Court pursuant to Local Rule 56 have been considered. Therefore, Defendants' Motion to Strike is denied as moot.

## BACKGROUND

In November 2003, Filinovich applied for the position of the Director of Finance for the Village. (Def.'s 56.1(a)(3) Statement ¶ 4). Subsequently, the Village interviewed Filinovich on three separate occasions for that position. Prior to the interviews, Filinovich researched the Village's practices and found that its Board of Trustees met twice monthly on Tuesday. (Plaint.'s 56.1(a)(3)

Statement ¶ 8). Prior to a January 5, 2004 interview, Claar told Filinovich that the department heads are required to attend Village events. (Def.'s 56.1(a)(3) Statement 11). During the interview process, the Village provided Filinovich with a more complete description of the position than was in the advertisement. The job description did not include a requirement that the Director of Finance attend Village events that occur during the Sabbath nor did the Village inquire whether the candidate would be available during that time period. (Plaint.'s 56.1(a)(3) Statement ¶¶ 11-12). The Village's official website lists the twice monthly Board meetings as well as other events, such as picnics and parades, but does not list the budget workshops. (Id., ¶¶ 13-14).

As of January 5, 2004, Filinovich was deemed a top candidate for the Director of Finance position. (Plaint.'s 56.1(a)(3) Statement ¶ 15). On that date, Filinovich met with Defendants to negotiate the terms of an offer for employment. After the parties discussed Filinovich's salary and benefits, Filinovich's start date was discussed. (Id., ¶ 16). During the meeting, Claar offered Filinovich the position, contingent upon the Board's consent. (Id., ¶ 17). Later in the same meeting, Filinovich stated that she would be unable to attend any Village events held on the Sabbath (Friday sundown through Saturday sundown) because it was against her religious principles as a Seventh Day Adventist. (Def.'s 56.1(a)(3) Statement ¶ 7). Claar informed Filinovich that there would be four to five budget meetings a year, the Budget Workshops, that were held between 8:00 a.m. and noon on Saturday that she would have to attend. (Id., ¶ 8).

Filinovich suggested three possible accommodations for her religious practices: (1) holding the Budget Workshops on Tuesday nights when the Board regularly met; (2) holding the meetings on Sunday instead of Saturday; and (3) the meetings be held on Saturday, and a subordinate finance manager would attend instead of Filinovich. (Def.'s 56.1(a)(3) Statement ¶¶ 19-22). Filinovich

recalled that at the final meeting, Attorney Boan stated that "the accounting manager could go to these meetings once she hires this individual and then that would be a non-issue." (Plaint.'s 56.1(a)(3) Statement ¶ 27). She also recalls that after she suggested another Village employee attend the Saturday meeting, Claar immediately responded, "No, I want the finance director at these meetings." (Id., ¶ 28).

Filinovich was advised that none of the proposed accommodations could be made. (Def.'d 56.1(a)(3) Statement ¶ 23). Claar did not contact, or attempt to contact, Village Trustees regarding any of Filinovich's proffered recommendations before denying them on January 5, 2004. (Plaint.'s 56.1(a)(3) Statement ¶ 29).

The January 5, 2004 meeting lasted twenty to thirty minutes. (Plaint.'s 56.1(a)(3) Statement ¶ 23). Filinovich was not hired for the Director of Finance position. (Def.'s 56.1(a)(3) Statement ¶ 23). But for Filinovich's religious observance of the Saturday Sabbath, Claar would have submitted her name to the Board of Trustees as the candidate to hire. (Plaint.'s 56.1(a)(3) Statement ¶ 22).

The Mayor, the Director of Finance, the Village Clerk, the Village Attorney, the department heads (the Director of Public Works, the Fire Chief, the Police Chief, the Director of Community Development, and the Director of Information Technology), and the Village Trustees are all required to attend the Budget Workshops. (Def.'s 56.1(a)(3) Statement ¶ 26). The Budget Workshops are an important part of the Director of Finance's position, and the attendees at the Budget Workshops rely on the Director of Finance to explain the budget and answer questions about the budget. (Id., ¶¶ 9-10). In addition, department heads and Trustees attend Village events which sometimes fall during the Sabbath. (Id., ¶ 12). The Budget Workshops occur three to five times a year and last approximately four hours. (Plaint.'s 56.1(a)(3) Statement ¶ 34). The Budget Workshops have been

3

held on days other than Saturdays, including Tuesdays. (Id., ¶ 33). Typically, a Budget Workshop is held on a weekday night when only a single department's budget is on the agenda, when the process is nearly complete and the meetings are expected to be shorter or when there is an impending deadline and no other time is available. (Def.'s 56.1(a)(3) Statement ¶ 35).

The Director of Finance is responsible for projections of future revenue and expenses as part of the budget process. None of the other employees in the Finance Department have this type of responsibility; rather, they work with historical accounting records. (Def.'s 56.1(a)(3) Statement ¶ 48). At the Budget Workshops, the proposed budget is reviewed in detail, and the Village Trustees ask questions about the budget. If the Director of Finance did not attend the Budget Workshops, there would possibly be no one there to answer questions about the revenues or explain the budget books. (Id., ¶ 49). The current Director of Finance does not believe that any other employee in the Finance Department has sufficient knowledge about all aspects of the budget to take the role of Director of Finance at the Budget Workshops. (Id., ¶ 56).

The fiscal year 2002 preliminary budget was presented to the Board of Trustees by the Mayor and the Village Administrator. (Plaint.'s 56.1(a)(3) Statement ¶ 46). The fiscal year 2004 and 2005 preliminary budget was presented to the Board of Trustees, at least in part, by the Mayor. (Id., ¶¶ 48-49). The Budget Officer receives each department head's preliminary budget submissions, meets with each department head to discuss these submissions, and directs the department heads to make any necessary corrections. (Id., ¶ 50). The Village Attorney works with the Director of Finance on balancing the budget in preparation for the Budget Workshops. (Id., ¶ 51). The Village Attorney presents the initial budget summary or overview at the Budget Workshops. (Id., ¶ 52). The Village Attorney also presents an overview of the budget for the Executive Department. (Id., ¶ 54).

4

The Mayor, the Village Clerk, the Village Attorney, and several department heads prefer not to attend Budget Workshops on week nights because they work during the day and they are too tired to concentrate on the budget after a long day at work. (Def.'s 56.1(a)(3) Statement ¶ 30). Other department heads prefer not to attend Budget Workshops on week nights because they have other obligations on week nights, including Village committee meetings. (Id., ¶ 31). Several Village Trustees also have full-time jobs in addition to their part-time positions with the Village. (Id., ¶ 32). The Village Trustees prefer not to attend Budget Workshops on week nights because they are too tired to concentrate on the budget. (Id., ¶ 34). The Village Trustees regularly meet every other Tuesday for approximately an hour-and-a-half, beginning at 8:00 p.m. (Plaint.'s 56.1(a)(3) Statement ¶ 44).

The Mayor, the Village Clerk, the Village Attorney, several department heads, and several Village Trustees prefer not to attend Budget Workshops on Sundays because of other commitments, including their church activities. (Def.'s 56.1(a)(3) Statement ¶¶ 38-46).

The department heads are also expected to attend and participate in Village events and functions. (Def.'s 56.1(a)(3) Statement ¶ 57). Attendance at the Village events and functions provides an opportunity for the citizens of the Village to interact with the department heads. (Id., ¶¶ 58-60). Some of the Village events and functions occur during the Sabbath. (Id., ¶ 61-62). The Village Attorney and department heads have missed some Village events. (Plaint.'s 56.1(a)(3) Statement ¶¶ 66, 68). Employees wishing not to attend Village events seek "special dispensation" from either the Village Attorney or Claar. (Id., ¶ 69).

## ANALYSIS

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

It is unlawful to discriminate against an individual because of that individual's religion. 42 U.S.C. § 2000e-2(a)(1). "Religion" is defined to include "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). Furthermore, there is an affirmative duty on employers to reasonably accommodate the religious practices and observances of its employees, unless the employer can demonstrate that such an accommodation would cause an undue hardship to the conduct of its business. 42 U.S.C. § 2000e(j); *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1574 (7th Cir. 1997) (*Ilona*). Thus, if a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the employer to make a reasonable accommodation of the religious practice or to show that any accommodation would result in an undue hardship. *See Ilona*, 108 F.3d at 1575.

To establish a *prima facie* case of religious discrimination, a plaintiff must demonstrate that: (1) the practice or observance conflicting with an employment requirement is religious in nature, (2) she called the religious practice or observance to the employer's attention, and (3) the religious practice or observance was the basis of discriminatory treatment. *See Ilona*, 108 F.3d at 1575.

The undisputed facts demonstrate that Filinovich has established a *prima facie* case of religious discrimination. Plaintiff's observance of the Sabbath is religious in nature, was called to the Village's attention, and was the basis of her not being hired for the position of the Director of Finance.

Filinovich seeks summary judgment on her Title VII claim of religious discrimination, arguing that the Village failed to recommend any accommodations and did not engage in an interactive process to determine if those that she had offered were reasonable.

Any employer's failure to engage in an interactive process or causing the process to breakdown itself is insufficient to support employer liability. *See Rehling v. City of Chicago*, 207 F.3d 1009, 1015-16 (7th Cir. 2000) (*Rehling*). Instead, the employee must demonstrate that the breakdown of the interactive process led to the employer's failure to provide a reasonable accommodation. *See Rehling*, 207 F.3d at 1016.

After Filinovich informed Claar and others at the January 5th meeting that she would be unable to work during the Sabbath, a discussion was held during which Filinovich offered possible accommodations that would allow her to observe the Sabbath and be hired. Filinovich was informed that the possible accommodations could not be made. The extent of the discussions is not clear from the record before the Court. The undisputed facts demonstrate that genuine issues of material fact exist as to the extent of the discussion (interactive process) that took place and whether that interactive process broke down and led to the Village's failure to provide Filinovich a reasonable accommodation. Accordingly, summary judgment cannot be granted in Filinovich's favor.

Defendants argue that Filinovich's proposed accommodations would have caused an undue hardship on the Village; therefore, summary judgment should be granted in their favor. Conversely, Filinovich argues that summary judgment should be granted in her favor because the accommodations would not have caused an undue hardship.

An employer that demonstrates that it cannot accommodate an employee's religious needs without suffering undue hardship is not liable under Title VII. *See Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1997) (*Hardison*). What constitutes an undue hardship depends on "the facts and circumstances of each case, and ultimately boils down to whether the employer acted reasonably." *Ilona*, 108 F.3d at 1577 n.8. The Court has construed an undue hardship as anything more than a *de minimis* cost to the employer. *See Hardison*, 432 U.S. at 84. However, "Title VII does not contemplate unequal treatment between those employees with religious reasons for avoiding working on certain days and those who have 'strong, but perhaps nonreligious, reasons for not working on the weekends.'" *Hardison*, 432 U.S. at 80-81.

Undue hardship has been found: where altering employees' schedules would have had an impact on collectively bargained for shift preference, *Hardison*, 432 U.S. at 79-81; where altering employees' schedules would have resulted in a negative impact on other co-workers by exposing those co-workers to a greater share of potentially hazardous work and exposing the employer to potentially greater liability, *Bhatia v. Chevron U.S.A., Inc.*, 734 F.2d 1382, 1384 (9th Cir. 1984); and where altering schedules would have affected co-workers' compensation and time-off, *Weber v. Roadway Express, Inc.*, 199 F.3d 270, 264 (5th Cir. 2000).

Filinovich proposed the accommodation that the Budget Workshops be held on days/nights other than the Sabbath. Defendants contend that holding the Budget Workshops on any day/night

other than Saturday would cause an undue hardship because it would negatively impact other attendees by requiring them to meet on days/nights that conflict with their schedules and because meeting on a weeknight would not be as productive because many of the other attendees work during the weekday. Defendants also identify the need for department heads to attend Village events that may be held during the Sabbath.

Defendants have identified "hardships" if the Budget Workshops are held on days/nights other than Saturday. However, the attendees of the Budget Workshops already meet on days/nights other than Saturdays for other meetings and have met on days/nights other than Saturday for the Budget Workshop itself. Claar also indicated that Filinovich was required to attend Village events. Filinovich's religious practice would not have prevented her from attending all Village events, and other Village employees that are expected to attend Village events have been excused from attendance on occasion. Accordingly, genuine issues of material fact exist as to whether the identified hardships constitute an undue hardship.

Defendants also argue that Filinovich's proposed accommodation that a subordinate finance employee attend the Budget Workshop in her stead would cause an undue hardship because the Director of Finance is qualified to attend and answer questions about the budget. Defendants offer conclusory statements that the Director of Finance must be present at the Budget Workshops. However, several other individuals and subordinate finance employees are involved in the budget process and the Budget Workshops. Furthermore, Filinovich has offered a statement attributed to the Village Attorney that someone could be hired to attend these meetings in Filinovich's stead. While Defendants deny the statement, Defendants have not demonstrated by the undisputed facts presently before the Court that no reasonable jury could find that allowing a subordinate to attend

the Budget Workshop would not cause an undue hardship on the Village. Accordingly, summary judgment is denied.

Defendants next argue that Filinovich's Section 1983 claim fails for the same reasons as the Title VII claim. *See Kelly v. Municipal Court of Marion County*, 852 F. Supp. 724, 738 (S.D. Ind. 1994 (applying Title VII elements to Section 1983 discrimination claim). As set forth above, summary judgment as to Filinovich's Title VII claim is denied. Accordingly, summary judgment based on the identical arguments is also denied as to the Section 1983 claim.

Defendants also argue that Filinovich's Section 1983 claim fails because Claar did not have final policy-making authority.

Municipalities are liable under Section 1983 if a municipality's official policy or custom deprives an individual of a constitutional right. *See Monell v. Department of Social Servs. of the City of New York*, 436 U.S. 658, 690-91 (1978) (*Monell*). A plaintiff can establish that a municipality is liable for a violation of her civil rights by showing that (1) the municipality adopted an express policy that, when enforced, caused a constitutional deprivation; (2) the municipality engaged in a widespread practice that, although not authorized by written or express municipal policy, constitutes a custom or usage with the force of law; or (3) the constitutional injury was caused by a person of "final policy-making authority." *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 734-35 (7th Cir. 1994).

Filinovich alleges that the Village is liable for the discriminatory acts of Claar, who has final policy-making authority. Whether an individual possesses final policy-making authority is a question of state law to be decided by the court. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988); *Eversole v. Steele*, 59 F.3d 710, 716 (7th Cir. 1995 (*Eversole*). Policy-making authority

may be granted directly by the legislature or may be delegated by an official who possesses such authority. *See Eversole*, 59 F.3d at 716. Factors considered in determining whether an individual has final policy-making authority are determined by applicable state law and include: (1) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority, (2) whether the official is meaningfully constrained by policies not of the official's own making, and (3) whether the official's decision is subject to any meaningful review. *See Fabiano v. City of Palos Hills*, 336 Ill. App. 3d 635, 656 (2003).

Defendants argue that Claar did not have final policy-making authority to hire Filinovich because the Village's Municipal Code provides that the Board of Trustees had the final say in whether Filinovich was hired. The Village Code provides that the "Director of Finance and Administration shall be appointed by the Village President [Claar] with the advice and consent of the Board of Trustees for an indefinite term."

The undisputed facts establish that Claar was granted the authority to appoint the Director of Finance, and such appointment was within his discretion. Thus, the decision to, or not to, recommend Filinovich for the position was within the realm of Claar's grant of authority. Defendants have offered no evidence that Claar had any meaningful constraint as to whether to proceed with Filinovich as the top candidate for the position. However, Claar's appointment of Filinovich had to be presented to the Board of Trustees for "advice and consent." There is a factual dispute as to whether or not Claar's decision was subject to a meaningful review by the Village Board. Accordingly, there exists a factual dispute as to whether Claar had final policy-making authority as to the hiring of the Director of Finance.

Lastly, Claar argues that he is protected from liability under the doctrine of qualified immunity.

If a public official raises the defense of qualified immunity, the plaintiff bears the burden of showing: (1) whether she has asserted a violation of a constitutional right and (2) whether the applicable constitutional standards were clearly established at the time the alleged violation occurred. *Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir. 2000). A clearly established right is established if the plaintiff can demonstrate that "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (*Anderson*). "This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful . . . but is to say that in light of the pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 639-40.

Here, Filinovich has asserted a violation of her constitutional right based on Claar's alleged religious discrimination. It was also clearly established that an employer has a duty to make a reasonable accommodation unless doing so would cause an undue hardship. Claar contends that his decision not to hire Filinovich because any accommodation would cause an undue hardship based on the inconvenience to others was objectively reasonable; and, therefore, Filinovich has failed to demonstrate the applicable constitutional standards were clearly established at the time the alleged violation occurred. In light of the genuine issue of material fact as to whether the hardships constituted an undue hardship, a genuine issue of material fact exists as to whether it was reasonable for Claar to believe that his denial of the accommodations was not violating the clearly established

right to be afforded reasonable accommodations absent undue hardship. Accordingly, summary judgment on this issue is denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment are denied. Defendants' Motion to Strike is denied as moot.

Dated: October 19, 2005

JOHN W. DARRAH
United States District Judge